Good morning, Your Honor. Richard Martinez on behalf of Ms. Diana Baker, who is also present here in the courtroom today. May it please the Court. The appeal in Baker raises two fundamental questions. They are distinct questions that I will address separately. The first question that I raise, that the appeal raises, that the Court must address, is what is the plain meaning of Rule 56? Here we have a motion for summary judgment brought pursuant to the Rule 56. And in that rule, the language specifically provides in subsection A that the motion must identify each claim or defense or the part of the claim for which summary judgment is sought. In this case, it is undisputed that that did not occur. We have a First Amendment complaint which is addressed and brought to the Court's attention, the district court's attention, at the outset in the response to the motion for summary judgment, which identifies to the Court that in fact what we have, although labeled as a motion for summary judgment, is a motion for partial summary judgment. In that complaint, the ---- Are you arguing, counsel, that we lack jurisdiction here? No, sir. Not, Irma, am I asserting that you lack jurisdiction? Did the district court not dispose of all of the claims? It did not, Judge. It did not dispose of all of the claims, and it can't issue a final order in the case, right, in which case we would not have appellate jurisdiction. I disagree, Judge, because, if I may, the Court, at the conclusion of its ruling, although only addressing both in its ruling on the motion for summary judgment and its ruling with respect to the motion for reconsideration, dismissed the case in its entirety. Yes, and said that summary judgment is proper as to all of the claims. Yes, ma'am. And the motion itself requested dismissal of the entire case. If you look at page 14, the motion requests summary judgment on each of the counts and dismissing the complaint in its entirety with prejudice. So whether the arguments were complete or not, the motion sought dismissal of every claim and the entire complaint, and the district court ruled in that manner. So where's the defect? The defect, Your Honor, is threefold. First of all, if we return to the Court's decision in Solitex, the Supreme Court made clear that the losing party with respect to motions for summary judgment must be put on notice that she had to come forward with all of her evidence. Yes, but why isn't the paragraph I read you notice to you that every claim was at issue, where the motion said we want the entire complaint and every count in it dismissed? Because the motion, Your Honor, and as I address it in the response, is that this the manner in which this motion was submitted is essentially a deception. It's a stealth motion. And what I mean by that, Your Honor, is the following. They seek dismissal or they seek summary judgment on the plaintiff's claims with respect to 42 U.S.C. section 1981 and separately for the claim that is under 42 U.S.C. section 2008-2 and 3, the Title VII claims. That's the gender and retaliation claims. They do not address that, in fact, under each of those, there are a total of 13 distinct claims. And you only set out four counts. How are they supposed to get different claims under the counts? You set out that you had four counts. You addressed each of those four counts in their motion for summary judgment. Your Honor, in the First Amendment complaint, we set forth specific allegations that identify. Now, how many counts did you have in your First Amendment complaint? In the First Amendment complaint, there are four counts, Your Honor. There's 1981. Counts 1 and 2. Both of those to race and national origin and is to retaliation. There's also the 42 U.S.C. 2000e-2 claim, which is the gender, race and national origin. And then in count 4, Your Honor, there's the 42 U.S.C. section 2000e-3, retaliation. The motion for summary judgment, which you claim is a motion for partial summary judgment, failed to address one of those counts. If so, which count? The count that it failed to address, Your Honor, with respect to all of those, were the claims that are specifically underlie those counts. But, counsel, that's not a – if anything, that might mean that there's some kind of mistake on the merits if there wasn't evidence to support summary judgment for defendants. But it doesn't appear to be a procedural mistake of any kind, as distinct from perhaps a substantive mistake, which is quite a different matter. You started by saying you had two big issues. What's your second big issue? Yes, Your Honor. If I might complete just on that one point, and then I'll certainly move to the second. This Court, in two separate decisions, I think has come to conclusions that buttress the position of the plaintiff in this appeal. In Green v. Solano County Jail, Your Honor, which also in that decision, there's a reliance on a Nissan Fire and Marine Company Limited v. Fritz, this Court has said that with respect to a motion for summary judgment, that it is incumbent on the moving party to identify each essential element of the claims which they assert are deficient. In this case, Your Honor, the only – the only claims that was addressed with respect to the sufficiency in meeting the elements required was with respect to overtime. And that's what the Court addressed. The Court did not address any of the other claims which are set forth in the case, and it is identified that there were numerous claims that were raised under Title VII in Section 1981. You have the disparaging remarks. You have the discipline. You have the threats of termination. You have the refusal to transfer. Those are all distinct claims that arise under both statutory schemes. But they're not distinct counts. And that's – claims and counts is what we usually look at. You can style it as a count or you can just style it as a claim. You only set out four, and they did address those. So this goes to Judge Graber's question, that perhaps you are better addressing – better looking at the merits to say the district court was incomplete in its analysis of a particular count. But, Judge Bobby, if I may just for a moment, in addressing that, under that interpretation of Rule 56, Your Honor, then you would require a plaintiff to set out counts by each claim under the legal theory, which means that in this case you would have had 13 counts. I think that that is not common practice. You could have – for example, counsel, you could have a retaliation claim that says, I've got ten different incidents, instances in which I was retaliated. Or this is a hostile work environment, and let me give you 15 times when people said really awful things and did things that go beyond, you know, practical jokes and management. And that does occur, Your Honor. That's not 15 claims. That's 15 pieces of evidence to support one claim. And if the district court fails to address one of those, then that may be a correctable error. Your Honor, and in this instance that does occur, with all due respect, because what we identify for the court is in the First Amendment complaint and in the underlying charges of discrimination is that, for example, there had been discipline administered in a differential manner, that the client had been threatened and actually disciplined repeatedly when, in fact, males, her peers on the pool-pulling crew, who engaged in similar or more egregious conduct, were not disciplined at all. In fact, the supervisor engages in a cover-up. Counsel, what is your second big issue before you run out of time? Yes, Gabor. Let me address that. The second claim, Your Honor, is the court's interpretation of the facts and its ruling. And I raise that in the context of the Supreme Court's most recent decision in Tolan v. Cotton. In Tolan v. Cotton, the court per curum has recently made clear that the role of the court is essentially to provide all inferences to the nonmoving party, to accept their evidence that is provided, and to essentially focus on the question of whether or not there's a material question of fact that arises. In this case, Your Honor, and if I may address them in reverse order, with respect to the claims of retaliation which are raised, the court, while it addresses the retaliation claim, it is silent as to the issue with respect to temporal proximity. And there, the court ignores the decisions of this circuit in both Strasser and Pacitino, that not only that temporal proximity can establish the prima facie case, but temporal proximity can be sufficient, in fact, to establish that there is a material question of fact. That's not addressed by the court. We believe that that's an error and that, in fact, given the temporal proximity and the disparity in treatment that occurs here, that, in fact, there is a clear question of fact as to whether or not retaliation occurred. Well, now, so what is the act for which she was retaliated? The act for which she was retaliated, Your Honor, is that shortly after Ms. Baker was transferred from the courtyard where she was a front-end loader in the courtyard to the pole-pulling crew, she complains of discrimination. There's no dispute that she engages in February of 2009 and thereafter repeatedly in protected conduct. She complains of differential treatment, of being treated differently. Okay. So that begins in 2009? Yes, ma'am. And the retaliation is what? And the retaliation starts shortly thereafter, Your Honor, because the records that are established is that all over time, and understanding over time was in the courtyard and stays there for six months, Your Honor. She then is moved by the company's discretion to the pole-pulling crew. She makes known that she remains interested and available for over time. Once she complains, she's never used again. And what the record establishes is that there are at least 340 hours, I believe what the record establishes, of over time available that is all assigned to Mr. Christie. Mr. Christie is the very individual who denies her to be a crane operator, who is ---- Is there any other adverse action that you presented to the district court other than the issue of crane operator time? Yes, Your Honor. And, well, basically overtime opportunities. What other adverse employment actions are you ---- did you present to the district court? Presented to the district court, Your Honor, or the response, Your Honor, focused specifically on that which is addressed by the motion, which was the wage issues. Mention is made at the outset in that motion to the fact that the motion does not factually address the other claims that are raised. I think we're not communicating. I'm looking for what are the ---- to have a claim for retaliation, there has to be an adverse employment action. It's not enough that someone looks at you cross-eyed. So, and I understand that you're complaining about the denial of crane operator time and the denial of overtime opportunities. But what other adverse actions did you talk to the district court about and present evidence of to the district court, if any? The evidence of other adverse actions, Your Honor, was more general than specific. And what the court was directed to in footnote three, but also in the introductory response, and also provided substantial information on by way of background, was that which had occurred and the number of claims that have raised. So specifically, Your Honor, the focus of the response was on the wage issue or the lack of overtime. That's what the court addressed. The other issues were addressed by the response from the court ---- excuse me, from our response that the other claims had not been addressed. The other analogy, Your Honor, and I want to save at least a minute, but let me say I think that the manner in which this motion is made is essentially akin to a sui sponte ruling, and it occurs without notice. I think that it is incumbent that in the context of a motion for summary judgment that the claims made, and I don't mean just the counts, Your Honor, but with all due respect, I mean the claims that are made, whether it's the vulgarities, the discipline, the lack of transfer, that if they are deemed deficient, then they need to be raised, and that is the burden on the moving party. Thank you. Thank you, counsel. We will hear from the defendants. Good morning, Your Honors, and may it please the Court. I am Andrew Jacobs for the Appalese Southwest Energy Solutions, Incorporated, and Tucson Electric Power, Incorporated, also represented here in court by its in-house attorney, Kristen Page-Iverson, behind me to the right. I thought it was interesting that counsel chose to begin the argument by making this case about the plain meaning of rules, for if it is about the plain meaning of rules, then surely the absence of any controversion of the 25 identified numbered facts of record, which supported our motion for summary judgment, entitle us to affirmance in this court, as it would entitle us to summary judgment in the first place. There is no attempt to controvert the 25 numbered statements, and I'm not saying that formalistically, because it's not as if, when you look at the additional statements of fact that were then offered, it's not like those impliedly contradict my 25 statements. It's not like you can find, by mining within them, controversions of the facts that entitled us on the merits to summary judgment in this case. So, for example, there's no attempt to controvert that Scott Christie was better at operating the front-end loader. And that fact carries across the analysis of the three different legal issues which in clusters are this case. There's sex discrimination. There is race discrimination alleged. There is retaliation alleged. There's all kinds of retaliation. Right. And the coalyard is one of the two things that is a nexus of fact where there's a concrete allegation and there's some attempt to show evidentially that something was done wrong to Ms. Baker. There's the coalyard overtime and there's the crane operator pay. Because much of the argument focused on this idea that we didn't really move for summary judgment, there are several things, a couple of which aren't immediately apparent from looking at the opinion below I'd like to point out. Not only was there not a controversion, as I've stated, but then I think it was the night before the oral argument before the district court, but it was immediately before, there was document 175 which was not authorized by the court or the rules and it is an unauthorized, quote, statement of disputed facts. And it seemed to be an attempt on the eve of the argument to say, well, we really did controvert things that needed to be controverted. And if you look at document 175, what really puts to rest the idea that there were some extant phantom claims that we didn't somehow address, the last paragraph in 175 says, well, there are disputed issues of fact. And counsel there cites only the crane operation and the coalyard overtime, which is what the whole case and the motion ended up being about. So when pressed right on the eve of oral argument in document 175 to say, well, no, I really controverted things, despite the complete lack of an attempt to address our facts, numbers 1 through 25, counsel then pointed back only to the things that we contend are the sum and substance of the dispute. And this readily demonstrates that there are no other claims out there. Another way of determining that is that when you look at the actual fact statement that was filed by counsel, number 143, you don't see evidence of any of these phantom claims that you're supposed to think constitute the margin between the counts which you were just discussing with counsel and these additional supposed claims up to number 13 that are out there. There's nothing making evidentiary before the Court's original summary judgment ruling the set of things which counsel vaguely alludes to. And that's why the district court said in the course of one of the two orders, I believe the first, said, you know, there's some sort of discussion here about, you know, retaliation by investigating, but there's nothing that is coed or coherent that I can look at and say is a particular act. The district court said that.  Kagan. Kagan. Can I ask you about the distribution of overtime claim? Yes, Your Honor. This is – is it correct that she's the only woman on the crew? She was the only woman in both of these work environments, Judge Brewer. And the argument is that she was not given overtime assignments and that they were given to someone else. Right. And the district court held that there was a good reason for that because he was better qualified? The district court – correct, Your Honor. Was there any showing – the existence of one woman in a crew is kind of a classic situation that arises in sex discrimination cases. Was there any evidence or any indication that other men were given overtime assignments in order to improve their skills? I'm sorry, that other men were? That other men on the crew, other than Mr. Christie, were given assignments in order to improve their skills? I don't believe there's any evidence in the record about that particular scenario. And speaking to the foundation. Was there any evidence of any other – of anyone else being given overtime assignments? No. I believe the question to overtime at issue in the co-yard that they're complaining about was given solely to Scott Christie. The population was very small, Your Honor. I believe as a factual matter, there were three or four people who would work in the co-yard at once. So there would be a very small number of people eligible to seek the overtime, a very small number of males and Ms. Baker being the only female. And that issue was resolved by the court, I think, correctly because of the articulation of not only a legitimate nondiscriminatory purpose, but here it was – All of the overtime went to one person? No, Your Honor. I think that the overtime that Ms. Baker wanted in a narrowly defined period of time went to Mr. Christie. There wasn't discovery about a very long duration of time of co-yard overtime. The only attempt to show as far as who got more overtime overall was done in our statement of fact. And we drew a comparison over almost a two-year period using an exhibit that Diana Baker's counsel introduced at the deposition of her witness, who was her union head. And over the period of late 08 to mid-10, she got more overtime than Scott Christie. So if the question is longitudinal, we would win because there would be no issue of fact because, in fact, Mr. Grijalva, the head of her union, admits that she got more overtime over a nearly two-year period, which we think is strong evidence of our good faith. But going back to the legitimate nondiscriminatory purpose that we're discussing facts around, it's striking that Ms. Baker herself admitted in what became our statement of fact number six, the deposition, page 251 or so, she admitted... And then he did a better job on that test in 2008. He did, when they were observed together. And so there was a chance to have a comparison. And the comparison was made not only in front of Tim Hurley, who is the decision-maker, but the evidence by which we elicited this testimony from Ms. Baker was that there were notes of a gentleman named John John Aguirre, who was lower in the chain of command than Mr. Hurley, and who was friendly with Ms. Baker. And he, at the time, had opined Robert Christie, I think. Scott Christie's brother was the best. And then there was a second individual, and then a third individual. And his notes represented a hierarchy. And so it wasn't that I just asked her out and out, was he better than you then? I elicited that the observation of others at the time, do you agree that it was true? And so there's corroborative evidence around this that I think should give the court comfort, that this is a stark admission and a legitimate business purpose for which the company assigned the relatively modest amount of overtime at issue. So we think that there were only the claims which were just discussed in colloquy with the court. We did address all of those claims. And the question of what was out there, we tried to pursue that assiduously through not only discovery, but there was really no disclosure under Rule 26, what are your buckets of damage? And that's one of the ways you learn what someone's complaining about. Tell me all the buckets of your damage. And we never got answers during the year. Her employment was never terminated, correct? She's still employed today. Yeah. So that kind of narrows the range of potential damages considerably. Yes, Your Honor. And we tried very hard to learn what that claim was before her deposition. We did not get supplementation on the points for which we sought it until long after. And we did seek summary judgment on the theory that you never disclosed your damages during discovery. So it is a bit of a difficult burden-shifting exercise when you never tell somebody your damages completely during discovery to turn around in the Ninth Circuit and say, well, you didn't address all the things I was complaining about when you never told us in the first place. And that's, we think nonetheless, the district court dealt with this in the right way. I've come to the end of the things I would wish to address. Are there other questions I could address, Your Honors? I don't believe so. Thank you, counsel. Thank you for your time, Your Honors. Martinez, you have about half a minute. Your Honor, briefly. With respect to the issue of retaliation of the rage claim, the defendant is asking you to accept as not evidence of retaliation that all overtime in the courtyard went to the plaintiff up until the time that she complained of discrimination. Thereafter, that lightning bolt strikes and she gets no overtime, and it all goes to Mr. Christie. Not only does it all go to Mr. Christie, they then offer to distort the record by saying, well, look at a two-year proximity and see who got more time. Well, they're counting all the time she got prior to complaining of discrimination. What they don't deny is that after she complained of discrimination, she gets zero, none. And then they try to offer that she's the less skilled worker. What Mr. Hurley says is that he had never observed the person he sends, Mr. Christie, to the courtyard. While Mr. Christie had worked for the company, he'd never done front-end loading. And, in fact, the type of front-end loaders that were used, which were quite large in nature, had only been used for a consecutive period of six months by Ms. Baker. Logic tells you, ma'am, that, in fact, she's the more qualified individual. She'd been the one doing it. She wasn't removed from the position, Your Honor, for purposes of performing poorly. Thank you. Thank you, counsel. The case just argued is submitted, and we appreciate the arguments of both counsel.
judges: SCHROEDER, GRABER, BYBEE